**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

_____

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 6:16-cr-183-04** |
| **VERSUS** | **JUDGE ELIZABETH E. FOOTE** |
| **BARRY DRUILHET, JR.** | **MAGISTRATE JUDGE WHITEHURST** |

_____

## REPORT AND RECOMMENDATION

Before the Court is a motion to vacate, set aside, or correct sentence, filed pursuant to 28 U.S.C. § 2255 by Petitioner Barry Druilhet, Jr. ("Druilhet").  Rec. Doc. 393.  Druilhet presents numerous allegations.  The government filed a response to the Motion. Rec. Doc. 403 and the defendant filed a reply to the government's response. Rec. Doc. 404.  The matter, which has been referred to the undersigned Magistrate Judge for review, report, and recommendation, is now ripe for review.

### I. Procedural Background

#### A. Pretrial Proceedings

On July 13, 2016, Druilhet was charged by indictment in this Court with one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count 1) and use of a communications facility in causing or facilitating a drug trafficking crime, in violation of 21 U.S.C. § 843(b) (Count 7).  Rec. Doc. 1.  At his arraignment on July 25, 2016, the defendant pleaded not guilty to all charges and Lester Gauthier was appointed to represent him. Rec. Doc. 32.

On February 13, 2017, Druilhet filed a motion to suppress in which he challenged the adequacy of the affidavits supporting search warrants.  Rec. Doc. 113. After an evidentiary

hearing, the Magistrate Judge issued a report and recommendation recommending the denial of the motion to suppress. Rec. Doc. 132. After objections were filed, the district judge adopted the report and recommendation and denied the motion to suppress. Rec. Doc. 159.

On June 9, 2017, the government provided notice that it would introduce evidence obtained during the execution of a search warrant on April 10, 2015. Rec. Doc. 179. After the parties filed additional memoranda and presented argument, the Court held that evidence of the April 10, 2015, search was intrinsic to the conspiracy. Rec. Docs. 219, 220, 225.

**B. Trial Proceedings**

Trial in this matter began on July 31, 2017. On the second day of trial, in response to a motion to exclude the testimony of Michael McDaniel, a codefendant testifying for the government, the Court conducted a hearing outside the presence of the jury. Rec. Docs. 245, 371, p. 58. In that motion, defendant argued that McDaniel's testimony should be excluded because his chronic drug use had rendered him incompetent, and not merely impeachable. Rec. Doc. 371, p. 59. The court permitted defense counsel to cross-examine McDaniel outside the presence of the jury to determine if he would admit the nature and extent of his drug use, including whether he was currently abusing drugs. Although McDaniel admitted substance abuse issues, he denied using any controlled substances or intoxicants while in pre-trial detention. The government did not question McDaniel at the hearing. *Id.* at pp. 62-63. After McDaniel testified, defense counsel stated that he intended to call Druilhet as a witness "for the limited purposes" of that hearing. When the Court questioned whether counsel might be "opening him up to cross on the entire case" by calling him as a witness at the hearing, defense counsel responded in the negative. Counsel for the United States agreed in part, opining that by testifying, Druilhet was exposing himself to cross-examination only "as to things that have gone

2

on since the time of his incarceration with relation to Michael McDaniel." *Id*. at pp. 64-66. In light of the United States' concession that cross-examination would be limited, the Court stated it would go forward with the hearing. Rec. Doc. 371, pp. 65-66.

Defense counsel stated that he intended to call Druilhet as a witness in order to refute McDaniels' testimony that he had not been using drugs while detained pending trial. *Id*. at p. 66. Mr. Gauthier stated, "Now, I'm going to ask Mr. Druilhet, Judge, as a predicate, a series of questions to make sure he understands his right, because it is a waiver of his right not to testify. I want to make sure he understands that, if you will allow me to do it." The Court agreed to that procedure. *Id*. at p. 66.

Under direct examination by Mr. Gauthier and under oath, Druilhet responded as follows:

Q: Mr. Druilhet, you understand that you don't have to testify here today. Do you understand that?

A: Yes, Sir.

Q: Do you understand that, taking the stand, even for the purpose of this limited hearing, does waive certain rights not to be able to testify. Do you understand that?

A: Yes, Sir.

Q: Okay. Notwithstanding that, you wish to take the stand for the purposes of this hearing. Is that correct sir

A: Yes, sir.

Q: Well, okay. If you don't, you have to tell me. Then we're going to sit you back down, but you have to tell me that you're willing to testify for the purposes of this hearing.

A: (Nodding head).

Q: Okay? You have to respond out loud.

A: Yes, Sir.

*Id*. at p. 67.

Druilhet testified that beginning in mid-March of 2017, he and McDaniel were housed in the same dormitory at the St. Martin Parish Jail and were part of the same Bible study group. Druilhet claimed that during the time they were housed together, he saw McDaniel smoking marijuana and synthetic marijuana. Druilhet stated that he saw McDaniel and others smoking those substances "every day for about three weeks." Druilhet denied smoking those substances himself.  *Id*. at pp. 67- 70.

On cross-examination, government counsel asked Druilhet whether he had ever approached McDaniel with the reports "about not testifying against [him] … while [they] were incarcerated."  Druilhet initially said he had approached McDaniel and said, "You are a witness against me," but then he "[took] that back," and stated that he had instead asked McDaniel if he would testify in his defense. According to Druilhet, McDaniel had stated that "it's too late," because he had "already spoke[n] with the government," and the government intended to call him as its witness.  *Id*. at pp. 71-72.

Government counsel then asked Druilhet if he had "ma[de] any threatening or intimidating remarks to [McDaniel] about the fact he was testifying against [Druilhet] for the government." Druilhet denied having done so and asserted that any "altercations" between them had to do with aspects of the Bible study sessions. Druilhet further claimed he had taken that opportunity to chastise McDaniel about his marijuana use, as it "[didn't] look good" to the other members of the Bible study group.  *Id*. at pp. 72-73.

Regarding whether Druilhet had ever approached McDaniel with any "reports" or "paperwork," Druilhet claimed he had merely given McDaniel "all the stuff that pertained to him," as Druilhet felt he "didn't need [McDaniel's] plea agreement and a couple of other things."

4

Finally, Druilhet admitted that, in spite of his concerns about McDaniel and some others smoking marijuana in the jail, he never reported it. *Id*. at p. 75. He claimed that guards were aware of that conduct, but they "didn't write anybody up." *Id*. at p. 76. Although government counsel wanted to question Druilhet about his pre-trial contact with other co-defendants, the Court would not permit him to do so. *Id*. at p. 77.

Having heard the testimony, the Court overruled the defendant's objection to McDaniel's testimony and denied defendant's alternative request that McDaniel be drug tested prior to testifying. *Id*. at pp. 78-79. Thereafter, McDaniel testified as a government witness, admitting during direct and cross-examination a long history of criminal conduct, drug abuse, and mental illness. While he detailed for the jury his involvement with other members of the conspiracy, neither the United States nor the defendant elicited any testimony regarding his interactions with Druilhet at the jail. *Id*. at pp. 80-109.

During the trial, the defendant's counsel made two oral motions for a judgment of acquittal and an oral motion for declaration of mistrial, which were denied. Rec. Docs. 246-249. After a three-day trial, the defendant was found guilty as charged. Rec. Doc. 255.

### C. Sentencing

Using the 2016 version of the guidelines, the PSR recommended a base offense level of 32, pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(4), which is the offense level applicable to violations of § 843(b) and § 846 involving between 15 kilograms and 50 kilograms of cocaine. To that value, the PSR recommended a two-level enhancement because a dangerous weapon was possessed (U.S.S.G. § 2D1.1(b)(1)). The PSR also included a two-level enhancement because Druilhet attempted to obstruct justice (U.S.S.G. § 3C1.1) during his contact with McDaniel. The PSR thus recommended a total offense level of 36.

Regarding his criminal history, the PSR assessed the defendant seven criminal history points for 12 prior adult convictions; two additional points were added because he committed the instant offense while on probation for a prior drug conviction, producing a Criminal History Category IV. While that criminal history score and a total offense level of 36 typically produced an advisory range of 262- 327 months, Druilhet's range was restricted to 240 months, the statutory maximum.  Presentence Report (PSR), Rec. Doc. 334, p. 26, ¶ 109, *sealed*.

The defendant filed objections to the PSR and objected to application of the Section 3C1.1 enhancement for obstruction of justice, arguing that he never sought to intimidate McDaniel, but instead wanted to obtain McDaniel's truthful testimony.  In an addendum issued on October 26, 2017, the probation officer defended application of the enhancement considering the testimony at the mid-trial hearing.  Rec. Doc. 335, p. 1, ¶ 2, *sealed*.  The defendant also objected to basing the amount of drugs attributed to him on Foulcard, who was an unreliable witness and who had made out-of-court declarations.  *Id*. The defendant objected to the criminal history category as overstating the defendant's criminal background.  *Id*.

On December 15, 2017, the district court conducted a sentencing hearing. After argument from counsel, the Court overruled the objection to the § 3C1.1 enhancement.  The Court noted there were "two uncontroverted facts," namely "that Mr. Druilhet approached Mr. McDaniel to talk to him about his testimony; and that, secondly, when he did so, he had in his hand the Plea Agreement with the cooperation language." In the Court's view, this conduct "crosse[d] the line into obstruction of justice."  Rec. Doc. 342, pp. 14, 15. The Court also addressed the objection that the drug amounts were based on Foulcard's out-of-court statements and on his testimony that was not credible.  Rec. Doc. 342, pp. 15, 16. The Court pointed out that the use of the government reports containing Foulcard's statements was not unusual and that 26 kilograms was

6

a conservative amount.  Rec. Doc. 342, p. 19. The district court sentenced Druilhet to 240 months on Count 1, and 48 months on Count 7, to be served concurrently, followed by three years supervised release. Rec. Doc. 342, p. 39.

### D.  Appeal

Defendant raised the obstruction of justice enhancement on appeal and the Fifth Circuit affirmed the application of that enhancement. (The defendant also claimed ineffective assistance of counsel, an issue that could not be considered on direct appeal.). The decision was entered into the district court record as mandate on December 25, 2018.  Rec. Doc. 386. The United States Supreme Court denied the petition for writ of certiorari on April 15, 2019.  Rec. Doc. 389.

### E.  Section 2255 Motion

Druilhet filed the instant motion on April 13, 2020, raising the following issues: "(1) Druilhet's Fifth and Fourteenth Amendment rights to due to process were denied as Druilhet's sentence was based on erroneous information regarding drug quantities; (2) trial counsel and/or appeal counsel was ineffective for failing to argue that petitioner's due process rights were denied; (3) trial counsel was ineffective for failing to move for a Bill of Particulars/Motion in Limine prior to trial; (4) trial counsel was ineffective as he failed to object to improperly admitted evidence; (5) constructive amendment; (6) trial counsel was ineffective for failing to raise constructive amendment claim; (7) trial counsel was ineffective for failing to request a multiple conspiracies instruction; (8) trial counsel was ineffective as he failed to argue that evidence was insufficient to sustain a conspiracy conviction; (9) trial counsel was ineffective by putting petitioner on the witness stand during a closed hearing; (10) counsel was ineffective as he failed to prepare petitioner for guilty plea; and (11) the cumulative effect of each error."  Rec. Doc. 393.

## II.    Law and Analysis

### A.  28 U.S.C. §2255

Following conviction and exhaustion or waiver of the right to appeal, the court presumes that a defendant "stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (*quoting United States v. Frady*, 456 U.S. 152, 164 (1982)). Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). However, the collateral challenge process of § 2255 is no substitute for appeal. *E.g., Brown v. United States*, 480 F.2d 1036, 1038 (5th Cir. 1973). Thus, as a general rule, claims not raised on direct appeal may not be raised on collateral review unless the defendant shows cause and prejudice for his failure, or actual innocence. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). This is neither a statutory nor constitutional requirement, but instead a "doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). While it is generally the government's responsibility to raise the issue of procedural default, the court may still impose the bar *sua sponte. United States v. Willis*, 273 F.3d 592, 596–97 (5th Cir. 2001). However, this should not be done without first considering whether the defendant has been given notice of the issue and had opportunity to argue against application of

the bar, and whether the government has intentionally waived the defense. *Id.* at 597 (*citing Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000)).

The Court will first address Druilhet's due process violation claims and subsequently address all claims of ineffective assistance of counsel.

### 1. Due Process Violations

#### a. Drug Quantities

Petitioner first claims that his due process rights were denied because he was attributed with 26 kilos of powder cocaine based solely off the conspiracy's leader, Artey Foulcard's, trial testimony, which he alleges is "erroneous" for the following reasons: (1) Foulcard's trial testimony regarding the quantities was "unreliable, untrustworthy and lacked veracity;" (2) there was insufficient witness testimony corroborating the 26 kilogram amount; and (3) the wiretaps from Foulcard's phone demonstrate that petitioner was erroneously attributed with 26 kilograms. Doc. 393-1, pp. 4-7.

Insofar as Petitioner seeks to challenge the Court's application of the Sentencing Guidelines, his claim is not cognizable on section 2255 review. See *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999); *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) (misapplication of sentencing guidelines does not give rise to a constitutional issue cognizable under section 2255)). However, "[d]ue process requires that information relied upon when determining an appropriate sentence have some 'minimal indicium of reliability' and bear 'some rational relationship' to the decision to impose a particular sentence." *United States v. Angulo*, 927 F.2d 202, 204 (5th Cir. 1991) (citation omitted). A presentence investigation report generally bears sufficient indicia of reliability to be considered as evidence by the sentencing court in making the factual determinations required by the Guidelines. *United States v. Montoya-*

*Ortiz*, 7 F.3d 1171, 1179–80 (5th Cir. 1993). Furthermore, "generally, a sentencing court 'may properly find sufficient reliability on a presentence investigation report which is based on the results of a police investigation,' especially where the offense report is detailed and includes information gathered from interviews with the victim and any other witnesses." *United States v. Fields*, 932 F.3d 316, 320 (5th Cir. 2019) (quoting *United States v. Fuentes*, 775 F.3d 213, 220 (5th Cir. 2014)).

"Mere objections" by the defendant will not "cast doubt" on the presentence investigation report. The defendant must show the inaccuracy of the presentence investigation report "by introducing rebuttal evidence." *United States v. Moton*, 951 F.3d 639, 645 (5th Cir. 2020).

The government points out that, contrary to the Druilhet's assertion, his attorney did object to the amount of drugs attributed to him on the basis that Foulcard was not a reliable witness and that his out-of-court statements were not subject to cross-examination and were not admitted into evidence.  Rec. Doc. 335, p. 1, ¶ 4, ***sealed***.  The Court addressed this claim at sentencing, remarking that the presentence investigation report is presumed to be accurate and stated as follows:

> The Court would note that Mr. Foulcard's statements that were provided in reports is not an unusual thing to happen in a presentence report; that report—that the government's reports are often used in the presentence reports.

Rec. Doc. 342, pp. 15, 19.

The defendant's other allegations concerning witness testimony and the wiretap information do not take into account the rest of the evidence and ignore that 26 kilograms was a conservative estimate. Foulcard, Williams, McDaniel and Mascorro were debriefed by the FBI. PSR, Rec. Doc. 334, pp. 8-9, ***sealed***. Telephone calls and text messages between Druilhet and Foulcard on July 28 and 29 of 2013, were consistent with Foulcard's trial testimony.  Rec. Doc.

371, pp. 8-24. 136. Using code words, Druilhet and Foulcard discussed the delivery of 18 ounces of cocaine.  Rec. Doc. 371, pp. 21-23, 139-142, 152-155. In finding 26 kilograms a conservative amount, the Court stated as follows:

> In this particular incidence, the Court likewise finds that the 26 kilograms is a conservative effort of Mr. Druilhet's drug activity. The amount of drugs that were moved is contained not only in Mr. Foulcard's testimony, but as noted in the paragraphs which precede 22 in the presentence report, these amounts are corroborated by Williams, and Mascorro and McDaniel in their testimony as to the amount of cocaine that Mr. Druilhet was given at a given time, and the period of time, which is a lengthy period of time of at least four years, over which the drug dealing activity took place.
>
> Likewise, we have a tape that was played of a phone call which shows that the quantities that were being moved were in regular 9 ounces to 18 ounces. The Court specifically recalls the language where Mr. Druilhet orders from Mr. Foulcard two *shots to the head*, representing the two 9-ounce supplies of the cocaine at this time.

Rec. Doc. 342, p. 19.

The defendant has not presented any rebuttal evidence, whether at sentencing or in this motion, to contradict the amount listed in the presentence investigation report. He has also failed to show that he provided his attorney any evidence to present to rebut the information in the presentence investigation report. For these reasons, the defendant was not denied due process.

**b.    Constructive Amendment**

The defendant next argues that a "constructive amendment/material variance existed between the single conspiracy alleged in the indictment and the evidence adduced at trial of several separate and distinct conspiracies violating petitioner's fifth amendment."  Rec. Doc. 393-1, p. 12.  He contends that the "collective-overwhelming evidence of marijuana distribution" involving other members of the charged cocaine conspiracy constructively amended and/or

materially varied the indictment as he may have been convicted on the grounds of marijuana distribution, which was not alleged in the indictment.  *Id*. at p. 13.

A § 2255 motion is not a substitute for a direct appeal.  *United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991).  When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a movant must either (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error; or (2) show that he is "actually innocent" of the crime for which he was convicted.  *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999).

The "cause" standard requires the petitioner to show that "some objective factor external to the defense" prevented him from timely raising the claims he now advances. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective factors that constitute cause include interference by officials that make compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense. *Id.*

"A mere possibility of prejudice will not satisfy the actual prejudice prong of the cause and prejudice test," and a movant must instead "'shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Shaid*, 937 F.2d at 231 (quoting *Frady,* 456 U.S. at 170).

The cause-and-actual-prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal." *Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).  If the movant does not meet either burden, then he is procedurally barred from attacking his conviction or sentence. *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992).

12

In this case, Druilhet has not alleged that an objective factor prevented him from timely raising his claim at his sentencing hearing or in his direct appeal. Thus, he has not shown cause for failing to raise his claim by the time of his direct appeal.

Defendant's claim that his trial counsel was ineffective for failing to raise this claim is addressed below.

### 2.   Ineffective Assistance of Trial Counsel

Defendant raises numerous claims of ineffective assistance of counsel.   Ineffective assistance claims may be brought for the first time in a collateral proceeding under § 2255 regardless of whether the defendant raised the issue earlier. *Massaro v. United States*, 538 U.S. 500, 509 (2003).   Therefore, review of this claim does not require a determination of whether Druilhet raised all aspects of this claim on direct appeal. *Id.*; see also *United States v. Johnson*, 124 Fed. App'x 914, 915 (5th Cir. 2005).

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. 466 U.S. at 687.   A defendant must satisfy both prongs of the *Strickland* test in order to prevail, and the court need not approach the inquiry in the same order or address both components should the defendant fail to satisfy one.   *Id.* at 697.

The first prong does not require perfect assistance by counsel; rather, defendant must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* at 687–88.   In this review, courts "must make 'every effort . . . to eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *United States v. Fields,* 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Under the second prong, the court looks to any prejudice suffered as a result of counsel's deficient performance. This prong is satisfied if the defendant can show "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt" and that the errors were sufficiently serious to deprive the defendant of a fair trial with a reliable verdict. *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 694–95). Under *Strickland*, the court may also consider the cumulative prejudice from counsel's errors. See *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (addressing each issue of deficient performance found by the district court before considering whether the petitioner was cumulatively prejudiced thereby); see also *Dodson v. Stephens*, 611 Fed. App'x 168, 178 (5th Cir. 2015) (assuming without deciding that *Strickland* calls for a cumulative prejudice analysis).

Druilhet asserts that his counsel was ineffective in the following ways:

> **a. Failing to argue that petitioner's due process rights were denied because his sentence was based upon erroneous and material information regarding the drug quantity**

The defendant contends that his attorney was ineffective for permitting him to be sentenced on unreliable information. Rec. Doc. 393-1, pp. 4-7. As discussed in Section II(a)(1) above, defendant's due process rights were not denied and, therefore, his attorney was not ineffective for failing to make this argument.

14

**b.  Failing to move for a Bill of Particulars/Motion in Limine prior to trial**

Druilhet next claims that his attorney was ineffective for failing to file a motion for bill of particulars or a motion in limine in order to obtain information necessary for the defense.  Rec. Doc. 393-1, p. 8.  The defendant asserts that with a bill of particulars he would have been alerted that there were various conspiracies and that the conspiracy with which he was involved ended in 2014.

First, the filing of pretrial motions is considered a strategic decision, which is viewed with "deference commensurate with the reasonableness of the professional judgment on which [it] is based." *Strickland*, 466 U.S. at 681. Furthermore, the attorney cannot be ineffective for failing to raise a meritless claim. *Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections.").

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, the Court may order the government to file a bill of particulars. "The purposes of a bill of particulars are to obviate surprise at trial, enable the defendant to prepare his defense with full knowledge of the charges against him, and to enable double jeopardy to be pled in case of a subsequent prosecution." *United States v. Mackey*, 551 F.2d 967, 970 (5th Cir. 1977). However, a bill of particulars "is not designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980); *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978) ("[I]t is well established

that generalized discovery is not a permissible goal of a bill of particulars."). Here, there was no surprise at trial, and the defendant was aware of the charges against him.

The defendant claims that he should have been given information about the different conspiracies. He contends that at trial there was evidence of conspiracies entailing marijuana and cocaine with which he was not charged or involved.

During the trial, the distribution of various substances to varying locations was described, but the record shows that the defendant was charged with only the cocaine conspiracy involving distribution to Franklin, La, and that his attorney was aware of the other distribution networks. Foulcard testified that he was involved in two separate drug conspiracies, one in Baton Rouge and one in Franklin. Rec. Doc. 371, pp. 111, 113, 114, 129. Foulcard testified that the defendant was not involved in the Baton Rouge conspiracy. Rec. Doc. 371, p. 168. Defendant's counsel had the plea agreement and based his cross-examination on the plea agreement. Rec. Doc. 371, pp. 174, 181, 182. Counsel was, thus, aware that Foulcard had been involved in a separate conspiracy. A bill of particulars or motion in limine would not have provided him with any additional information. As to the marijuana conspiracy, the record shows that the defendant was never charged with or convicted of a marijuana offense.

The defendant also claims that a bill of particulars would have alerted him that the conspiracy ended in 2014 rather than 2015 as alleged in the indictment. He argues that if he had known that the conspiracy ended in 2014, he could have argued that the 2015 search of his house was not admissible as part of the conspiracy. He is relying on Foulcard's plea agreement providing that his conduct lasted until 2014. Rec. Doc. 371, pp. 183, 185. However, the indictment charging the defendant and the testimony at trial demonstrate that the conspiracy ended in 2015. Foulcard was arrested in June of 2015. Rec. Doc. 371, p. 166. The defendant

16

was also arrested in 2015. Furthermore, as mentioned above, the attorney had Foulcard's plea agreement with the date to which the defendant refers. A bill of particulars would not have added anything.

The undersigned agrees with the government's argument that Druilhet's attorney was not ineffective in not raising the meritless arguments made by the defendant above. *United States v. Harper,* Crim. No. 09-279-13, 2018 WL 4291753, at * 4 (W.D. LA. Sept. 9, 2018) (rejecting claim that attorney was ineffective for failing to file a motion for a bill of particulars, as defendant did not explain "what a bill of particulars would have revealed"). The defendant was not charged in multiple conspiracies, and the conspiracy ended in 2015. The attorney had the material necessary. This type of information is not encompassed within the requirements of a bill of particulars.

### c.   Failing to object to improperly admitted evidence

The defendant next contends that the attorney was ineffective for failing to object to "improperly admitted evidence."  Rec. Doc. 393-1, p. 9.  He asserts that his attorney should have objected to evidence of Foulcard's marijuana conspiracy, Foulcard's cocaine activity before the defendant joined the conspiracy, Foulcard's separate cocaine conspiracy in Baton Rouge, and the traffic stop on September 5, 2013.

As discussed in the section concerning the bill of particulars, the record establishes that the defendant was not charged with Foulcard's distribution of marijuana, distribution of cocaine before Foulcard began to provide the defendant with cocaine, or with Foulcard's distribution of cocaine in Baton Rouge. The defendant has not established why this evidence was not admissible. This is not evidence of other crimes under Fed. R. Evid. 404(b), as there is no evidence of allegation that the defendant was involved in that activity. Furthermore, this

17

evidence did not constructively amend the indictment. This evidence provided background information on Foulcard and his other associates and was not inadmissible as to the defendant.

A car driven by one of Foulcard's associates and containing marijuana and cocaine was stopped in Lake Charles in September of 2013. In explaining the relevance of this stop to the defendant, the government stated, "[I]t's the government's theory that some of the cocaine was destined for the defendant. Mr. Foulcard would pick up on a regular basis and deliver only to certain people." Rec. Doc. 371, p. 225. The government attorney further explained that although the individuals stopped were not charged, Foulcard was following this car and that this was "the way that Mr. Druilhet obtained his drugs was through this method, where they would go to Houston, and he would get a portion of every load. So we wanted the jury to be able to see that we corroborated Mr. Foulcard's testimony because we actually took off real cocaine." Rec. Doc. 371, p. 226.

Defense counsel did state that there was no relation. After the government's explanation, the Court permitted further evidence concerning the stop. Rec. Doc. 371, p. 226. There was no reason to object because, as the government's explanation provided, the stop was introduced to corroborate Foulcard's testimony concerning the manner in which cocaine was delivered to the defendant. Contrary to the defendant's allegation, the attorney did alert the Court to the relevance of this stop and the Court permitted further evidence. The attorney's actions were reasonable and did not prejudice the defendant.

### d. Failing to raise constructive amendment claim

As discussed above, the defendant is procedurally barred from raising the constructive amendment claim. However, he raises it in the context of an ineffective assistance of counsel claim, which is presently cognizable.

18

The Fifth Amendment guarantees that a criminal defendant will be tried only on charges alleged in a grand jury indictment. Once an indictment is returned, only a grand jury can amend or change the charges. *United States v. Delgado*, 256 F.3d 264, 278-279 (5th Cir. 2000). A constructive amendment occurs if, through the evidence the court allows and the jury instructions, the jury is permitted to convict a defendant upon a factual basis that effectively modifies an essential element of the offense charged. *United States v. Fernandez*, 559 F.3d 303, 328 (5th Cir. 2009). The defendant contends that evidence of other substances besides the cocaine charged in the indictment constituted a constructive amendment. As discussed in the section concerning the bill of particulars, there was evidence of conspiracies involving marijuana and other cocaine distribution networks, but the defendant was not charged or found guilty of those difference conspiracies. The jury was not instructed to find the defendant guilty of those conspiracies. Furthermore, that evidence did not amend the indictment. *United States v. Gonzalez,* 661 F.2d 488, 492 (5th Cir. 1981) (holding that there was no constructive amendment in a trial for conspiracy to distribute methaqualone, despite admission into evidence of other types of illegal narcotics). This claim has no merit and, therefore, the attorney was not ineffective for failing to raise this issue.

### e.   Failing to request a multiple conspiracies instruction

The defendant was not charged with multiple conspiracies. As discussed above, there was evidence of other distribution networks, but not of the defendant's involvement in those conspiracies, including Foulcard's marijuana distribution and cocaine distribution in Baton Rouge. A multiple conspiracy instruction would not have been relevant or appropriate. His attorney, therefore, was not ineffective in failing to request an inapplicable jury instruction.

### f.   Failing to argue that evidence was insufficient to sustain a conspiracy conviction

The government points out that, contrary to the defendant's assertion (rec. doc. 393-1, p. 15), during the trial, the defendant's counsel made two oral motions for a judgment of acquittal and an oral motion for declaration of mistrial, which were denied.  Rec. Docs. 246-249. Thus, this claim is meritless.

### g.   Putting petitioner on the witness stand during a closed hearing

The defendant claims that his attorney was ineffective for placing him on the stand during a closed hearing on a motion to exclude the testimony of Michael McDaniel. (Rec. Doc. 393-1, p. 17).  This issue concerning ineffective assistance of counsel was raised on appeal but not addressed because the record was not adequately developed. However, the Fifth Circuit found meritless the challenge to the enhancement based on the defendant's testimony.  Rec. Doc. 386.

The decision to advise a defendant to testify is a strategic decision that should not be second-guessed. *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir.1985) ("[T]he decision whether to put a Defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight."); *Winfrey v. Maggio*, 664 F.2d 550, 552 (5th Cir. 1981) (providing that the decision of whether to advise a criminal client to testify "is frequently one of the most difficult and vexatious decisions a trial attorney must make" and "[t]he examination of that decision with the visual acuity inherent in hindsight is grossly inappropriate." ); *Coker v. Thaler*, 670 F.Supp.2d 541, 553 (N.D. Tex. 2009) ("The decision whether to advise a defendant to testify is a tactical choice of trial strategy that is usually not subject to review under *Strickland*."); *Brantley v. Stephens*, No. 3:14-CV-2738-P, 2015 WL 8467346, at *5 (N.D. Tex. Oct. 27, 2015), report and recommendation adopted, No. 3:14-CV-2738-P-BN, 2015 WL 8320201 (N.D. Tex. Dec. 9, 2015) (" Assuming trial counsel advised

Petitioner to testify, Petitioner has not shown that advice should now be questioned by this Court through the backward-looking lens of federal habeas review.")

Here, as the questioning by the attorney cited above in Section I(b) indicates, the defendant was advised about his right not to testify.  The Court agrees with the government's reliance on the transcript, which demonstrates that the attorney made sure that the defendant understood the implications of testifying. Furthermore, the attorney's affidavit shows the strategic nature of that decision.  Rec. Doc. 403-1.  The strategy for the defendant to testify cannot be challenged and, as such, this claim is without merit.

### h.  Failing to prepare petitioner for guilty plea

Finally, the defendant claims that his attorney did not fully explain the plea agreement offered by the government and the consequences of proceeding to trial. He contends that with the proper explanation, he would have accepted the plea offer tendered by the government.  Rec. Doc. 393-1, pp. 19-20.

The Sixth Amendment right to effective assistance of counsel applies to the negotiation of a plea bargain, "a critical phase of litigation." *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *United States v. Rivas-Lopez*, 678 F.3d 353, 356 (5th Cir. 2012). "When considering whether to plead guilty to proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice." *Rivas-Lopez*, 678 F.3d at 356- 357.

The *Strickland* test applies to ineffective assistance of counsel claims in which the defendant asserts counsel's ineffective advice causes a defendant to reject a favorable plea offer and, thus, is subjected to a less favorable outcome in further trial proceedings. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). To establish prejudice, the defendant must show that "but for the

ineffective advice of counsel there is a reasonable probability" that among other things, "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Cooper*, 566 U.S. at 164; *United States v. Gonzalez*, 943 F.3d 979, 983 (5th Cir. 2019) (reiterating *Cooper* prejudice prong); *United States v. Reed*, 719 F.3d 369 373 (5th Cir. 2013) (same).

The defendant claims that his attorney presented a plea agreement to him on two occasions. Doc. 393-1, p. 19. He asserts that the attorney did not explain the language of the agreement to him, did not explain the possible enhancements and the impact of acceptance of responsibility and told him he would receive a twenty-year sentence if he did not plead guilty. *Id*. He contends that he would have accepted the plea agreement of 88-99 months if the plea agreement would have been explained to him.

The affidavit of defendant's attorney, Lester Gauthier, establishes that Gauthier did, in fact, discuss the plea agreement with the defendant on two occasions. Rec. Doc. 403-1. On June 7, 2017, the attorney notes that he explained "the existing plea packet and sentencing guideline calculations." *Id*. at p. 1. On June 25, 2017, he met with the defendant for one hour, during which time he "verified understanding of plea agreement." *Id*. at p. 2. In response to Druilhet's claim that the concept of "acceptance of responsibility" was not explained to him, Gauthier attests that his notes reflect an explanation of this concept, specifically, an "explanation of minus three points for acceptance of responsibility and the impact of that three-point reduction on any potential sentence." *Id*. Gauthier also stated that he discussed the defendant's reluctance

to plead guilty with the attorney representing the defendant on state charges.  *Id*.  These sworn statements by the attorney, which are supported by his notes, demonstrate that contrary to the defendant's unsupported allegations, the plea agreement was explained to him.   The Court finds that defendant's attorney explained the plea agreement to him and the repercussions of going to trial and that there was no misrepresentation or ineffective assistance of counsel

### I.    Conclusion

For the foregoing reasons, based on the record and the relevant jurisprudence,

**IT IS RECOMMENDED** that Druilhet's motion under 28 U.S.C. § 2255 be **DENIED** and **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.  Because Druilhet's claim is plainly refuted by the record, no evidentiary hearing is required.  *See United States v. Green*, 882 F.2d 999, 1008 (5th Cir. 1989).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE in Chambers on this 23rd day of March, 2023.

**Carol B. Whitehurst**
**United States Magistrate Judge**